UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------x
:
ANTONIO BALBINO DE JESUS,                    :
:
                              Plaintiff,     :        09 Civ. 4450 (TPG)
:
             – against –                     :        **<u>OPINION</u>**
:
AKAM ASSOCIATES, INC., 166 EAST              :
96th STREET OWNERS CORP.,                    :
:
                              Defendant.     :
:
:
---------------------------------------------x


:
AKAM ASSOCIATES, INC. and EAST 96th         :
STREET OWNERS CORP.,                         :
:
                    Third-Party Plaintiffs,  :
:
             – against –                     :
:
GALICIA CONTRACTING AND                      :
RESTORING CORP.,                             :
:
                    Third-Party Defendant.
---------------------------------------------x


       Plaintiff Antonio Balbino De Jesus brings this diversity action against

defendants Akam Associates, Inc. ("Akam"), and 166 East 96th Street Owners

Corporation ("Owners Corporation") to recover damages for injuries sustained

in an accident that occurred while plaintiff was working as a bricklayer on a

penthouse roof deck of the building at 166 East 96th St. Plaintiff alleges that

his injuries were proximately caused by defendants' violation of New York

1

Labor Law § 240(1). Defendants have impleaded Galicia Contracting and
Restoration Corporation ("Galicia") to seek contractual indemnification.

Plaintiff now moves for summary judgment on his statutory claim.
Defendants oppose that motion on the merits and also move, as third-party
plaintiffs, for summary judgment on their third-party claim.

Plaintiff's motion for summary judgment is denied, and defendants'
motion is granted.

### Facts

The following facts are not in dispute unless otherwise stated.

Owners Corporation owns an apartment building located at 166 East
96th St. Akam manages that property on behalf of its owners.[1] In October 2008,
it became apparent that the exterior of the building needed some repair and
restoration. Defendants engaged Galicia for this task.

In early 2009, Galicia employed plaintiff, a New Jersey resident, as a
bricklayer and cement worker on the project at 166 East 96th St. On February
6, 2009, plaintiff was working on an unfenced, inset roof deck above the
seventeenth floor of the building. The area on which he worked was
approximately five feet wide. Plaintiff was cutting a piece of wire mesh with a
grinder on this narrow stretch when he stumbled backwards over the edge of
the deck. He fell some twelve feet to a lower roof deck and hurt himself,
whereupon he was taken by coworkers to St. James Hospital in Newark for
treatment.

---

[1] Both Owners Corporation and Akam are New York corporations that principally, if not wholly,
operate within the state.

While this basic outline of events is well-established, the parties differ as to certain relevant details of the accident in question.

In an affidavit and a deposition, plaintiff claims that at the time of his fall he was not wearing a safety harness, because his supervisor, Fernando Paz, told him that there was no place on the roof deck where it could be secured. Paz, however, testified in a deposition that Galicia supplied its employees with safety harnesses that wrap around the thighs, shoulders, and waist and that plaintiff was wearing one on the day of the accident. The harness was purportedly affixed to a rope that was in turn secured to a steel beam abutting from a nearby water tower.

Paz also testified that during the week preceding the accident he had on more than one occasion noticed plaintiff wearing his safety harness incorrectly. Plaintiff was said to loosen the harness so that he could move about more freely during the course of his work. Paz claims that he specifically warned plaintiff that the harness would not provide proper protection if worn in that fashion. Plaintiff apparently adjusted the harness properly when told to do so.

Rather, Paz testified that he saw plaintiff wearing the harness on the day of the accident, but he did not observe plaintiff at the time of the accident, nor did he see the accident. Paz heard the noise of plaintiff's impact and went to the terrace where he had fallen. There, he observed plaintiff prone on the terrace, in the arms of another Galicia worker. Paz claims that plaintiff was still wearing the harness apparatus at this time. The apparatus appeared intact and functional, and the safety rope to which it was attached had pulled taut.

3

Paz did not observe whether plaintiff was wearing the harness incorrectly at the time of the accident.

Lastly, some features of the safety harness in question bear on the present motions and warrant discussion. The harness is designed to arrest the descent of a falling worker, but it can only arrest certain falls. In an affidavit submitted by plaintiff, Daniel Paine, a construction safety and fall protection expert, calculates what he calls the minimum fall distance to determine whether the harness apparatus could have protected plaintiff from the fall in question. The minimum fall distance essentially measures the length of the harness at maximum tension from the top of the lanyard to the bottom of the wearer's feet. Paine assumes that the lanyard was six feet long and starts his calculation with this figure. During a fall, the lanyard expands by 3.5 feet to provide shock absorption. Paine also claims there are three feet of stretch in the webbed material of the harness itself. Then Paine adds five feet to account for the part of the body that extends below the ring on that harness that connects it to the lanyard. Adding these figures, Paine calculates a minimum fall distance of 17.5 feet. In other words, if plaintiff "fell" less than 17.5 feet (as defined by Paine) wearing the harness, plaintiff would have hit the surface below. Paine concluded that a (Paine Aff. p. 6) "twelve-foot distance is entirely inadequate to permit the above factors to operate and prevent the worker from hitting the ground."

On this motion for summary judgment, the court does not intend to engage in a complete analysis of the somewhat complicated issue of minimum

4

fall distance. However, a few things need to be said. Most importantly, it is clear that a key factor is where the lanyard was anchored. If, for instance, the lanyard was anchored to the safety rope, and this anchoring was six feet away from plaintiff, then the minimum fall distance must be measured from that point. Paine does not seem to take this into account in his affidavit. The record now before the court does not show where the lanyard was anchored. Furthermore, there are other features of possible relevance about the harness apparatus, which are not shown in the present record, such as the length of the safety rope purportedly used at the worksite.

### The Present Action and Motions

Plaintiff brought suit on May 8, 2009. He had initially asserted claims under the common law of New York as well as New York Labor Law §§ 200 and 240(1).[2] Plaintiff has since voluntarily withdrawn all his claims except his claim under New York Labor Law § 240(1). He now moves for summary judgment on the ground that his injuries were proximately caused by the lack of appropriate safety devices at the worksite.

Plaintiff also moves to amend the complaint to eliminate certain dismissed parties from the caption, increase the amount of requested relief from $5 million to $15 million, and allege exceptions to Article 16 of New York Civil Practice Law and Rules, which Article would otherwise prevent plaintiff from recovering the full extent of his non-economic damages from defendants.

---

[2] Plaintiff also initially sued Glen Kapoosuzian and Everest Scaffolding, Inc., but these parties were dismissed from the case pursuant to a stipulation of discontinuance filed on September 29, 2010.

Defendants oppose summary judgment on the ground that issues of fact exist as to whether plaintiff proximately caused his own injuries by refusing to properly use the safety equipment provided by Galicia. In their capacity as third-party plaintiffs, defendants move for summary judgment against third-party defendant Galicia on the ground that Galicia contracted to indemnify defendants in the event defendants faced liability arising from Galicia's work and not attributable to defendants' own negligence.

## Discussion

<u>Motion to Amend</u>

There is no need for discussion; plaintiff's motion to amend is granted.

<u>Plaintiff's Motion for Summary Judgment</u>

Plaintiff sets forth two alternative grounds for summary judgment. First, he argues that if he was not wearing a harness at his supervisor's direction, then defendants inevitably failed to provide the proper safety equipment that Labor Law § 240(1) mandates. Alternatively, he argues that even if a jury found that he was wearing the safety harness—and wearing it incorrectly—when he fell, defendants are nonetheless liable because the harness could not have stopped his fall, even if worn correctly. In plaintiff's view, Galicia or defendants should have fenced the roof deck to properly protect against the risk of falling.

Labor Law § 240 (1) provides in relevant part:

> All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders,

> slings, hangers, blocks, pulleys, braces, irons, ropes, and other
> devices which shall be so constructed, placed and operated as to
> give proper protection to a person so employed.

The purpose of the statute is to "protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction work site elevation differentials." Runner v New York Stock Exch., Inc., 895 N.Y.S.2d 279, 281 (N.Y. 2009). Accordingly, "there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk" Id. "To sustain a cause of action based upon this section, plaintiff must prove that the statute was violated and that defendant's conduct in violating it was the proximate cause of plaintiff's damages." Smith v. Hooker Chemicals & Plastics Corp., 455 N.Y.S.2d 446, 448 (N.Y. App. Div. 4th Dep't 1982). The law "imposes absolute liability on owners, contractors and their agents for any breach of the statutory duty which has proximately caused injury." Gordon v. Eastern Ry. Supply, 82 N.Y.2d 555, 559 (N.Y. 1993). That duty is "nondelegable and … an owner is liable for a violation of the section even though the job was performed by an independent contractor over which it exercised no supervision or control." Id. (internal citations omitted).

The law undeniably applies to the case at bar. Plaintiff faced an elevation-related risk in the course of his repair work on a narrow perch. Furthermore, Owners Corporation is potentially liable as an "owner" and Akam as an "agent" of the owner. Thus the present motion turns entirely on whether plaintiff's injuries were proximately caused by a violation of the statute, i.e., by the failure to provide safety devices to properly protect plaintiff from the risk of

falling.

For liability to attach under Section 240(1), a violation of the statute need only be a proximate cause of plaintiff's injury, not the sole proximate cause. See Zapata v. Riverside Study Ctr., Inc., No. 10 Civ. 6283, 2012 U.S. Dist. LEXIS 69246, at *37-38 (S.D.N.Y. May 16, 2012). Hence the law does not permit a defense of contributory negligence. See Stolt v. Gen. Foods Corp., 597 N.Y.S.2d 650, 651 (N.Y. 1993). Thus, whenever a worker's injuries are caused, if only in part, by the failure to provide safety equipment appropriate under the circumstances, the owner is liable under Section 240(1). See Villeneuve v. State, 711 N.Y.S.2d 666 (N.Y. App. Div. 4th Dep't 2000). The question of whether a given safety device provided proper protection is normally one of fact. See Rice v. PCM Dev. Agency Co., 646 N.Y.S.2d 856, 857 (N.Y. App. Div. 2d Dep't 1996).

But "where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability."Cahill v. Triborough Bridge & Tunnel Auth., 790 N.Y.S.2d 74, 76 (N.Y. 2004).  Under the so-called "recalcitrant worker" defense, a defendant can show that plaintiff was the sole proximate cause of his injuries by establishing that that plaintiff "refused to use the available, safe, and appropriate equipment." Jastrzebski v. North Shore Sch. Dist., 637 N.Y.S.2d 439, 442 (N.Y. App. Div. 2d Dep't 1996). Furthermore, an employer who provides proper safety equipment and instructs a worker on its use does not have an ongoing duty to continuously monitor the employee to ensure that the equipment is used correctly. See Heath v. Soloff Constr., Inc., 487 N.Y.S.2d

617, 620 (N.Y. App. Div. 4th Dep't 1985). Rather, the recalcitrant worker defense can apply even when the employee was instructed about how to use the provided safety equipment weeks earlier. See Wojcik v. 42nd St. Development Project, Inc., 386 F.Supp.2d. 442,445 (S.D.N.Y. 2005).

In deciding whether plaintiff is entitled to summary judgment, the court starts with the fact that there is a direct conflict between plaintiff's version of the accident and defendants' version. Normally, this conflict would be enough to prevent the disposition of the case on summary judgment. However, plaintiff contends that summary judgment is appropriate because whether or not he was wearing the brace properly or improperly, the harness apparatus did not provide proper protection.

Plaintiff relies upon the calculations of Daniel Paine, discussed earlier in this opinion. But as that discussion indicates, the presentation by Paine is not based on a full set of facts. In particular, there are the crucial issues of the anchorage point of the lanyard and the length of the safety rope. Without knowing these facts, it cannot be known whether the harness apparatus could have protected plaintiff from the fall in question if worn properly.

Defendants argue that a reasonable jury could believe, based on their evidence, that plaintiff was provided appropriate safety equipment and that his injuries were proximately caused by a deliberate decision to misuse that equipment. It is crucial to their defense that the harness apparatus could have protected plaintiff if worn properly. In their version of events, the fact of the accident itself supports the recalcitrant worker defense. That is to say, if

plaintiff fell farther than he would have were the harness used correctly, then one could infer that plaintiff wore the harness too loosely on the day of the fall. One could then further infer from Paz's testimony that plaintiff intentionally misused the harness, because he had been told how to use it correctly and had, in fact, previously adjusted it to fit right.[3] In that event, a reasonable jury could find that plaintiff's conduct was the sole proximate cause of his injuries.

Thus plaintiff's motion for summary judgment is denied. Plaintiff has failed to establish defendants' liability as a matter of law under Labor Law Section 240(1), because he has not shown that the defendants or Galicia failed to provide a safety device "constructed, placed and operated as to give proper protection" to plaintiff.[4]

Defendant's Motion for Summary Judgment against Third-party Defendants

The contract between Owners Corporation and Galicia contains the following indemnification provision:

> 11.3)  To the fullest extent permitted by law, Contractor agrees
> to indemnify, defend and hold harmless Owner, its Managing

---

[3] This is not the same as saying that plaintiff had a habit of intentionally misusing the harness. Habit evidence is introduced under Rule 406 to prove that some physical act occurred on a given day—despite a lack of other evidence that it did—because the person charged with the act invariably acted thus in the circumstances. Here, the contention is that there is other evidence to prove that the harness was misused, and an inference about plaintiff's state of mind vis-à-vis that action may properly account for plaintiff's previously-acquired knowledge concerning the correct use of the harness.

[4] Plaintiff also argues that the court should treat the surface on which plaintiff worked as akin to a scaffolding, which supposedly must be equipped with perimeter fencing. The case law, however, does not rigidly distinguish scaffoldings from other work surfaces or otherwise impose different and specific safety standards for different work settings. Rather, the authority cited by plaintiff stands for the proposition that the safety equipment used in a certain setting must provide proper protection against the risks presented by that setting. This inquiry is obviously fact-intensive and the court concludes that a reasonable jury could find that the safety harness in question provided proper protection in the circumstances. Of course, a fence would have been protective, too. But defendants have no obligation to provide redundant safety equipment. See Grove v Cornell Univ., 904 N.Y.S.2d 559, 561 (N.Y. App. Div. 3d Dep't 2010).

Agent, their respective employees and agents from any and all claims, suits, damages, injuries, liabilities, professional fees, including attorneys' fees, costs, court costs, expenses and disbursements related to death, personal injuries or property damage, (including loss or use thereof) arising out of or in connection with the performance of the work by the Contractor, its agents, servants, subcontractors, or employees, of facilities owned by, or under control of the Owner. This agreement to indemnify specifically contemplates full indemnity in the event of liability imposed against the Owner, its Managing Agents and their respective employees and agents, without negligence and solely by reason of statute, operation of law or otherwise, and partial indemnity in the event of any actual negligence on the part of the Owner or its Managing Agent either causing or contributing to the underlying claim. In that event, indemnification will be limited to any liability imposed over and above that percentage attributable to actual fault, whether by statute, by operation of law or otherwise.

Defendants argue that if they are found liable in the present action, that liability will solely be "by reason of statute" and "in connection with the performance of the work by the Contractor." Accordingly, they seek a judgment of conditional indemnification that would become operative should plaintiff prove liability at trial.

"When liability attaches solely pursuant to Labor Law § 240 (1), indemnification may be sought from the party actually responsible for the supervision, direction, and control of the work giving rise to the injury." Cava Constr. Co., Inc. v. Gealtec Remodeling Corp., 871 N.Y.S.2d 654, 656 (N.Y. App. Div. 2d Dep't 2009) (citations omitted).  "However, a party seeking contractual indemnification must prove itself free from negligence, because to the extent its negligence contributed to the accident, it cannot be indemnified therefor." Id. (citing N.Y. Gen. Oblig. Law § 5-322.1).  Thus on a summary judgment motion for contractual indemnification, the movant must prove itself

11

free of fault. See Reynolds v. County of Westchester, 704 N.Y.S.2d 651, 652 (N.Y. App. Div. 2d Dep't 2000). To do so, the movant must demonstrate that he "lacked control over the work site or notice of the allegedly dangerous condition." Tarpey v Kolanu Partners, LLC, 892 N.Y.S.2d 445, 447 (N.Y. App. Div. 2d Dep't 2009).  If the movant satisfies its burden and the non-movant cannot raise a genuine issue of material fact on the issue, conditional indemnification is appropriate, even when the underlying question of liability remains an issue for trial. See Kemp v. Lakelands Precast, Inc., 449 N.Y.S.2d 710, 711 (N.Y. 1982).

Here, defendants have introduced provisions of the contract between themselves and Galician that establish that Galicia was solely responsible for supervising the work and maintaining the safety of the worksite. Furthermore, the deposition of property manager Timothy Teeple and Fernando Paz establish that neither defendant was meaningfully involved in overseeing Galicia's work. Rather, it appears that defendants merely helped Galicia access the property but otherwise did not intervene in the work being done.

Thus, defendants have introduced evidence showing that Galicia solely controlled the performance of the work being undertaken at 166 East 96th Street. Hence it would appear that defendants are potentially liable to plaintiff only by reason of the broad reach of Labor Law § 240(1). This is exactly the sort of liability the indemnification provision contemplates. It is thus incumbent on Galicia to produce evidence of negligence on the part of defendants sufficient to raise an issue of fact for trial.

Galicia places great weight on the fact that plaintiff, in his deposition, testified to the presence of pipe sections on the roof. Plaintiff further testified that Galicia did not move the pipe and was not otherwise responsible for its presence. Galicia argues that defendants were responsible for and had notice of these pipe sections and that an issue of fact exists as to whether plaintiff tripped over a pipe as a result of defendants' negligent failure to remove the pipe sections or otherwise remedy the dangers they created.

This argument, however, distorts plaintiff's deposition testimony, which consistently distinguishes the pipes on the roof from the "debris" that plaintiff claims to have tripped over. In his deposition, only the questioning lawyer asserts that plaintiff tripped over the pipes on the roof. Consider the following exchanges from the transcript:

> Q: Now as we left for lunch we were talking about what you were doing immediately before the accident, and as I understand it you were the plugs into the mesh to hold the wire mesh and as you were doing that you tripped on some debris and fell to your left; is that correct?
> A: Correct. (P. 66)
>
> ***
>
> Q: Using your own words describe to me what kind of pipe you were talking about?
> A: That pipe was lying down.
> Q: It was just a piece of pipe lying down on the roof?
> A: It was.
> Q: And was that the debris created by the work or was that supplied to use for the work or something else?
> A: Or something else?
> Q: No, that pipe was there we were not the ones who moved it, it wasn't us. (p. 138)
>
> ***
>
> Q: The piece of pipe that you tripped over, can you identify it, how long was it?
> A: I believe I tripped on the debris I was removing. (p. 140)

13

Plaintiff's distinction between the pipe and the debris is corroborated by his affidavit on the present motion, in which he again asserts that he tripped on "construction debris." He does not mention pipe. Moreover, plaintiff's deposition makes plain that Galicia's employees were "removing" the debris, i.e., that they, not defendants, had control over the debris.

In summary, Galicia has not introduced any evidence that plaintiff tripped over a pipe within defendant's control. Galicia has, at best, raised "metaphysical doubt" about whether plaintiff may have actually tripped over the pipe. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 485 U.S. 574, 586 (1986). Thus defendants' motion for conditional indemnification is granted.

## Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied, plaintiff's motion to amend   complaint is granted, and defendants' motion for summary judgment for conditional indemnification is granted. This opinion resolves docket items number 46 and 61.


Dated:  New York, New York
        August 23, 2012

Thomas P. Griesa
U.S.D.J.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/23/12

14